UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> SYCAMORE COMMUNITY UNIT SCHOOL DISTRICT #427 and DAYLE BOYLE, <br><br> Defendants/Counter-Plaintiffs. | No. 20 CV 7081 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

In this insurance-coverage dispute, Westport Insurance Corporation seeks a declaration that it has no duty to defend or indemnify Sycamore Community Unit School District #427 or former District employee, Dayle Boyle, in a suit brought by a former student. The parties agree that the applicable insurance policies control the outcome and cross-move for judgment on the pleadings under Rule 12(c). For the reasons set forth below, there is no coverage under the policies for the claims asserted against the District and Boyle.

**I.     Legal Standards**

The same standard applies to a Rule 12(c) motion for judgment on the pleadings and a Rule 12(b) motion to dismiss. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). I take all well-pleaded allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Id.* Judgment on the pleadings should be granted only when "it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and

that the [moving party] is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). I consider the complaint and counterclaims, answers, and documents attached to the pleadings. *See Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).

## II. Background

From 2001 to 2004, Sycamore Community Unit School District #427 purchased liability insurance from Westport Insurance Corporation's predecessor. [14] at 1–2, ¶ 2.[1] The policies indemnified the District and its employees (when acting within the scope of their employment) from damages caused by certain occurrences. They also required the District to notify Westport of any suit or occurrence that may result in a claim. In 2019, former Sycamore High School student Dustin Ruby sued the District and former athletic trainer, Dayle Boyle, alleging that Boyle sexually abused Ruby when he was an underage student. The District and Boyle sought coverage under the policies, but Westport refused to defend the suit. Ruby's lawsuit against the District and Boyle, *Dustin Ruby v. Sycamore Community Unit School District #427, et al.*, No. 2019-L-50, remains pending before the Circuit Court of Dekalb County.

### A. The Insurance Policies

Westport issued three liability insurance policies to the District covering 2001 to 2002, 2002 to 2003, and 2003 to 2004. *See* [1-2], [1-3], [1-4]. Westport has no duty

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. There's no dispute that Westport stands in the shoes of its predecessor. For simplicity and readability, I refer to the policies as Westport policies.

2

to defend the underlying suit under the 2003–2004 policy because the allegations in Ruby's complaint precede that policy period. According to the underlying complaint, the final at-school sexual act between Boyle and Ruby occurred on May 10, 2003, Boyle resigned three days later, and the school punished Ruby the day after that. [25] at 57–58, 60, ¶¶ 32–34, 36, 43. The policy period for the 2003–2004 policy did not start until July 1, 2003. [1-4] at 2. The 2003–2004 policy provided coverage to the District for bodily injuries caused by "'occurrence[s]' arising from 'sexual misconduct,'" but it expressly excluded coverage for "any person who allegedly or actually participates in any act of 'sexual misconduct.'" *Id*. at 110. The policy further provided that "[i]f the date of the 'occurrence' precedes the effective date of the policy, then any liability … is not covered." *Id*. at 111. So Boyle—the only party seeking coverage under the 2003–2004 policy, *see* [25] at 47, ¶ 56—is not entitled to coverage. Westport is entitled to judgment on the pleadings on Counts II and VI of its complaint.

The first two policies did not have a sexual-misconduct exclusion. The 2001–2002 policy provided coverage for damages because of "bodily injury" caused by an "occurrence" and for "'personal injury' caused by an offense arising out of [the District's] business." [1-2] at 113–114. The policy also promised to defend lawsuits seeking such damages. *Id*. It defined "bodily injury" to include "bodily injury … mental anguish, mental injury and humiliation, sustained by a person." *Id*. at 128. The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and "personal

3

injury," in relevant part, as "injury arising out of … [m]ental anguish, mental injury and humiliation." *Id*. at 130–31. Insureds under the policy included the District (the named insured) and its employees, "but only for acts within the scope of their employment or at [the District's] direction." *Id*. at 124. The policy excluded from coverage, however, damages for any bodily injury or personal injury "arising, in whole or in part, from any dishonest, fraudulent or criminal act of any insured." *Id*. at 114. The District had a duty to notify Westport "as soon as practicable of an 'occurrence' or an offense which may result in a claim." *Id*. at 126.

The 2002–2003 policy covered mostly the same ground. It again provided coverage for bodily injury arising from an occurrence and personal injury caused by an offense to which the coverage applied; it adopted the 2001–2002 policy's definitions of "occurrence" and "bodily injury"; and it excluded from coverage any bodily or personal injury "arising from any dishonest, fraudulent or criminal act" of any insured. [1-3] at 188, 190, 217, 222. The District's employees also remained insured only for acts within the scope of their employment. *Id*. at 219. But the policies weren't identical. Unlike the 2001–2002 policy, the 2002–2003 policy's definition of personal injury did not encompass "injury arising out of … [m]ental anguish, mental injury and humiliation." *Id*. at 222. The notice requirement, moreover, did not require notification "as soon as practicable." Instead, it required the District to notify the insurer in writing "if a claim or 'Suit' is brought against an 'Insured' or in the event of an 'Occurrence' that [m]ay result in a claim under this policy" or "[i]nvolves … [r]ape and/or serious physical assault … regardless of perceived liability." *Id*. at 207–

4

08. After notifying the insurer of such an occurrence, the policy dictated that the District "must also [c]ooperate with [the insurer's] investigation, settlement or defense." *Id*. at 208.

### B. The Underlying Action

In August 2019, Ruby filed a complaint in Illinois state court, alleging that from 2001 to 2003, Boyle engaged in an inappropriate and sexually abusive relationship with him while he was a minor. *See* [25] at 90, 95, ¶¶ 23–26. The complaint alleged that Sycamore High School employed Boyle as a graduate assistant athletic trainer while Ruby was a student and member of several athletic teams. *Id*. at 91–92, ¶¶ 2–6, 9–10. Ruby alleged, among other things, that a coach witnessed he and Boyle engaging in inappropriate sexual conduct on May 10, 2003—just weeks after Ruby had turned 18—and that "top level administrative staff, as well as district safety and supervisory personal" began an investigation into the matter and punished Ruby within days. *Id*. at 96–97, ¶¶ 31–38. Ruby amended his complaint four times between January 2020 and February 2021. *Id*. at 52, 112, 128, 166. The February 2021 operative complaint removed allegations against Boyle relating to her sexual relationship with Ruby after he reached the age of majority on April 15, 2003. *See id*. at 58–59, ¶¶ 37–42. But the core factual allegations remain the same. *See id*. at 52–204; [14] at 4.

Ruby originally brought an intentional tort claim against Boyle and negligence and willful and wanton conduct claims against the District. [25] at 98–103, 107–08, ¶¶ 43–49, 56–58. In addition to willful and wanton conduct, Ruby labeled Boyle's

5

grooming, sexual touching and abuse as "negligent" in the second amended complaint. *Id.* at 147, 149 ¶¶ 22–23, 33. In the operative complaint, Ruby asserts claims against the District for willful and wanton conduct and against Boyle, both individually and as an agent for the District, for negligence and willful and wanton conduct. *Id.* at 52–88. Ruby alleges that the District willfully and wantonly failed to properly investigate and report Boyle's inappropriate conduct, allowed Boyle to have unrestricted and unsupervised access to minors and to abuse Ruby, and failed to protect Ruby from 2001 to 2003 while he was a minor. *Id.* at 59–60, ¶ 42. As for Boyle, the complaint contends that she acted both negligently and willfully and wantonly by grooming and physically touching, abusing, and engaging in sexual conduct with Ruby as a minor. *Id.* at 66, ¶ 31; *id.* at 73, ¶ 34; *id* at 80, ¶ 34; *id.* at 86, ¶ 31. Ruby contends that, as a result of Boyle's abuse and the District's conduct, he has and will continue to suffer pain, trauma, and psychological, spiritual, and emotional injury and distress. *Id.* at 60–61, ¶ 45; *id.* at 67, ¶ 34; *id.* at 74, ¶ 37; *id* at 80, ¶ 37; *id.* at 86, ¶ 34.

The District notified Westport of the suit less than a month after Ruby filed his first complaint. [21] at 10, ¶ 30. Westport informed the District that its policies did not provide coverage because the District allegedly knew of the abuse no later than May 2003 but did not provide notice until Ruby filed his lawsuit sixteen years later. [1-6] at 2. The District admitted that in May 2003, it "was made aware of an incident that had occurred in Sycamore High School's athletic training room between Ruby and Boyle [and] investigated the incident," but the District concluded that Ruby

6

had violated the District's code of conduct "by engaging in sexual acts with an athletic trainer on School District property." [1-8] at 3. The District said that its investigation did not conclude that any occurrence had taken place under the policies because Ruby was 18 at the time, it had found no evidence of rape or serious physical assault by Boyle, and Ruby was at fault. *Id*. Westport has refused to defend both the District and Boyle in the underlying action. [21] at 10, ¶ 31; [26] at 16–17, ¶ 39.

Westport filed this suit seeking a declaration that it has no duty to defend or indemnify the District or Boyle. [1].[2] The District and Boyle argue that Westport is obligated to defend the underlying suit and they bring counterclaims for breach of contract. [14], [25]. Each party moves for judgment on the pleadings.

### III. Analysis

Under Illinois law, which all agree applies to this case, courts determine an insurer's duty to defend by comparing the allegations in the underlying complaint to the text of the insurance policy. *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021). The duty to defend is broader than the duty to indemnify—it's triggered even when the facts alleged in the underlying complaint only potentially fall within the policy's coverage. *See Lexington Ins. Co. v. Chicago Flameproof & Wood Specialties Corp.*, 950 F.3d 976, 980 (7th Cir. 2020). Any doubts about the duty to defend, including ambiguities in contractual language or the underlying complaint, are resolved in favor of the insured. *See Shockley*, 3 F.4th at 327–28; *Founders*

---

[2] The court has subject-matter jurisdiction under 28 U.S.C. § 1332. Westport is a Missouri corporation headquartered in Missouri, the District and Boyle are citizens of Illinois, and the amount in controversy exceeds $75,000. [1] ¶¶ 8–10, 12.

7

*Insurance Co. v. Munoz*, 237 Ill.2d 424, 433 (2010). An insurer cannot refuse to defend a suit "unless it is clear from the face of the underlying complaint that the facts alleged do not potentially fall within the policy's coverage." *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021) (quoting *G.M. Sign, Inc. v. State Farm Fire and Cas. Co.*, 2014 IL App (2d) 130593, ¶ 25).

The scope of an insurance policy is a "pure question of law" to which "traditional principles of contract interpretation apply." *See Shockley*, 3 F.4th at 327. A court's "primary function" when "construing contracts for insurance is to ascertain and give effect to the parties' intent as expressed in the insurance contract's language." *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 32. Courts "must assume that every provision was intended to serve a purpose" and construe an insurance policy "as a whole, giving effect to every provision … and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract." *Rich v. Principal Life Ins. Co.*, 226 Ill.2d 359, 371 (2007) (citations omitted).

As with any contract, when an insurance policy's terms are clear and unambiguous, courts must "give them their plain and ordinary meaning." *Krishna Schaumburg*, 2021 IL 125978, ¶ 32. If, on the other hand, the terms are susceptible to more than one reasonable meaning, "they are considered ambiguous and will be construed strictly against the insurer who drafted the contract." *Id*. To determine whether a provision is ambiguous, courts consider "[o]nly reasonable constructions"

8

of the language and "will not strain to find ambiguity in an insurance policy where none exists." *Hess v. Est. of Klamm*, 2020 IL 124649, ¶ 16 (citations omitted).

### A. The District

Westport's duty to defend the District in the underlying litigation depends on whether the District provided the requisite notice under the 2002–2003 policy.[3] Westport does not argue that Ruby's underlying claims fall outside potential coverage on any other basis. Instead, Westport focuses on notice, homing in on the District's admissions that it: (1) knew in May 2003 that Boyle and Ruby engaged in sexual acts, (2) investigated the matter and punished Ruby, and (3) did not provide notice to Westport until after Ruby filed his lawsuit in 2019. [1-8] at 3; [14] at 22, ¶ 57.[4] The District argues that Ruby was an adult in May 2003, it found no evidence of rape or serious physical assault, and it had no reason to believe there had been any occurrence requiring notice. Even if the encounter were an occurrence, the District says, the pleadings do not show that a reasonable school district with the District's knowledge would have determined that a claim was likely, and its prompt notice to Westport of Ruby's suit fulfilled its obligations under the policy.

Notice provisions "impose valid prerequisites to insurance coverage" and "[b]reaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy." *Country Mut. Ins. Co. v. Livorsi*

---

[3] The District seeks coverage under only the 2002–2003 policy. *See* [1-5] at 2; [14] at 34–37, ¶¶ 22–29, 35–37.

[4] The District argues that it would be improper to rely on disputed allegations from Ruby's complaint regarding what the District knew and when. I agree and focus only on what the District concedes it knew in May 2003. [1-8] at 3.

9

*Marine, Inc.*, 222 Ill.2d 303, 311–12 (2006). Likewise, an insured's "breach of a notice requirement absolves the insurance company of any obligation to defend … the insured." *State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017). An occurrence-based notice provision requiring "an insured to give the insurer notice of an accident is a reasonable policy requirement, one which affords the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence." *Barrington Consol. High Sch. v. Am. Ins. Co.*, 58 Ill.2d 278, 281 (1974). Where the material facts are undisputed "the reasonableness of notice to an insurer by its insured is a question of law." *AMCO Ins. Co. v. Erie Ins. Exch.*, 2016 IL App (1st) 142660, ¶ 21.

The first issue here is whether the District knew of an occurrence in May 2003 that triggered its notice duties. The District argues that its knowledge of a single instance of sexual conduct between Ruby and Boyle—both adults—was not an occurrence that required notice under Westport's policy. The District contends that that there was no basis for it to believe that an "incident of student misconduct" may have given rise to a claim under Westport's policy. [31] at 11–12. Because Ruby was an adult, the District argues, "there was no basis … to believe that it had discovered a potentially covered 'occurrence' at that time, i.e., exposure to harmful conditions that may lead to a suit seeking damages for mental anguish." *Id*. at 12.

It was unreasonable for the District to conclude that sexual conduct between a student and an employee at school was not an occurrence that may trigger a claim. That the District determined Ruby was at fault and the conduct was not rape or

10

serious physical assault does not matter—the District should have known that sexual acts between an adult employee and a student who had just turned 18 may result in a claim for bodily injury, mental anguish, or mental injury and humiliation. A reasonable school district, moreover, would have known that an employee's sexual contact with a student on school grounds may give rise to a claim against the District based on exposure to the conditions that led to the encounter. Finally, a reasonable school district should have known that its decision to punish Ruby—the student—for sexual acts with a school employee might give rise to a claim against the District for mental anguish or humiliation.

The District's reliance on *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill.2d 278 (1974), is inapt. There, the Illinois Supreme Court held that a school district was not required to provide notice to its insurer of a gym-class accident that resulted in a student's injury when "there was no ground for the insured as a reasonable person to believe that a claim under the policy would be made." *Id.* at 283. The court, however, "was referring to the distinction between accidents covered by the policy and those not covered," and clarifying that an insured has no duty to provide notice of accidents obviously not covered by a policy. *Brumit*, 877 F.3d at 358. When, on the other hand, "such a ground does exist, the insured has a duty to report" the occurrence. *Id.* And that's the case here; because the District knew of an occurrence that may give rise to a claim—sexual acts between an employee and a student on school grounds that led to discipline against the student—it had a duty to provide notice under the policy.

11

The next question is whether the District's notice was reasonable. In resolving disputes over notice provisions, "Illinois courts have read such provisions as requirements that the insured provide notice within a reasonable time." *Id.* at 357; *Barrington.*, 58 Ill. 2d at 281 ("Provisions in policies stating when the insurer must be notified of a covered occurrence have generally been interpreted to require notification of the company within a reasonable time, considering all the facts and circumstances of the particular case."). This background principle does not imply that ambiguity exists in a notice provision; instead, courts supply a reasonable-time requirement when a policy "does not identify a specific time frame for giving notice." *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 238 Ill.2d 177, 186 (2010). Doing so enforces Illinois law's expectation that an insured "act diligently when providing notice … to its insurer." *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 313 Ill.App.3d 457, 465 (1st Dist. 2000).

The timeliness of an insured's notice "is determined by the totality of the circumstances." *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 811 (7th Cir. 2019). Five non-dispositive factors guide the inquiry: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *Yorkville*, 238 Ill.2d at 185–86.

The first factor—the policy's language—does little here to "aid in [the] reasonableness analysis because it does not identify a specific time frame for giving notice." *Id*. at 186. The 2001–2002 and 2003–2004 policies required notice "as soon as practicable," but the 2002–2003 policy contained no temporal modifiers at all. It stated that "if a claim or 'Suit' is brought … or in the event of an 'Occurrence' that [m]ay result in a claim under this Policy," then "regardless of perceived liability … [the District] must notify [Westport] in writing." [1-3] at 207–08. The District argues that because there's no temporal modifier, written notice at any time would satisfy the provision. *See* [31] at 7–8.

But when a policy fails to provide specificity regarding when notice must be given, courts applying Illinois law impose a reasonableness requirement. *Deerfield Constr.*, 933 F.3d at 812 (notice provision with "non-specific modifiers"—such as "prompt" or "as soon as practicable"—"require only that an insured provide notice within a reasonable time"). Non-specific modifiers are still modifiers, however, and when an insurance company elects to draft a notice provision with no hint of a temporal limit at all, perhaps unreasonably late notice is what the insurance company bargained for. And perhaps that is especially so when, as the District argues, the insurance company has included temporal language in other polices but omitted it from the policy at issue.

But this would make little sense. For starters, it would wipe out the contract's mandatory occurrence-based notice requirement entirely. When interpreting a contract's terms, courts must give effect to every provision. *See Rich*, 226 Ill.2d at

13

371. The policy here provided that the District "must notify" Westport in writing "in the event of an occurrence" that may result in a claim or when a suit is brought against the District. The notice provision also stated that the District "must also [c]ooperate with [Westport's] investigation, settlement or defense." [1-3] at 208. The policy's notice provision imposed mandatory duties on the District in the event of an occurrence. *See Andrews v. Foxworthy*, 71 Ill.2d 13, 21 (1978) ("The use of the words 'shall' or 'must' is generally regarded as mandatory."). And Illinois courts have rejected attempts to construe notice provisions as advisory. *See Am. Standard Ins. Co. of Wisconsin v. Slifer*, 395 Ill.App.3d 1056, 1061–62 (4th Dist. 2009) (although insurer "could have structured its policy to better convey the mandatory nature of the notice provision, we nonetheless reject [the insured's] contention that the notice provision was merely advisory").

The District's reading would allow it to perpetually forgo notice in the event of an occurrence and wait until a lawsuit materialized. That would undermine the central purpose of the occurrence-based provision—to afford the insurer the chance to timely investigate and preserve possible evidence of a potential claim. *See Barrington*, 58 Ill.2d at 281; *see also Erie Ins. Exch.*, 2016 IL App (1st) 142660, ¶ 21 ("The purpose of a notice requirement in an insurance policy is to enable the insurer to conduct a timely and thorough investigation of the insured's claim."). The 2002–2003 policy, read as a whole, indicates that the notice provision was intended to serve that purpose. *See* [1-3] at 208 ("An 'Insured' must also: [c]ooperate with our investigation, settlement or defense.").

14

The third and fourth *Yorkville* factors strongly favor Westport.[5] The District admits that it knew in 2003 that its employee engaged in sexual acts with a student, it investigated the matter, and it punished the student for engaging in sexual acts with an adult employee on school property. It was aware of an event that may trigger coverage. The fourth factor is related; it asks whether "the insured, acting as a reasonably prudent person, believed the occurrence … was not covered by the policy." *Yorkville*, 238 Ill.2d at 188. The District acknowledges that it was aware of the 2002–2003 policy but argues that it reasonably believed that the encounter was not an occurrence likely to give rise to a claim. But the 2002–2003 policy required the District to provide notice "regardless of perceived liability." [1-3] at 208. Further, this factor "is not about [the insured's], or anyone else's, ability accurately to predict the potential outcome of a lawsuit," but rather "it is about whether the facts underlying the incident are covered by the policy's terms." *Deerfield Constr.*, 933 F.3d at 812. As discussed, the District knew of sexual acts between a student and an employee on school property and it was unreasonable to conclude that this was not an occurrence that may give rise to a claim.

The final factor considers whether late notice prejudiced the insurer. *See Livorsi*, 222 Ill.2d at 317 (holding that "the presence or absence of prejudice to the insurer is one factor to consider when determining whether a policyholder has

---

[5] The District is sophisticated in matters of insurance and annually negotiated and purchased comprehensive coverage. *See* [1-2], [1-3], [1-4]. The second *Yorkville* factor does not provide a reason to excuse a sixteen-year delay in providing notice of an occurrence that may trigger a claim.

15

fulfilled any policy condition requiring reasonable notice"). The District contends that any prejudice is speculative and emphasizes that it provided prompt notice to Westport of Ruby's suit. But as discussed, the District's failure to provide timely notice of the occurrence—not the suit—deprived Westport of the opportunity to investigate, gather evidence, and resolve potential claims for sixteen years. This factor also weighs in Westport's favor. And, in any event, "once it is determined that the insurer did not receive reasonable notice of an occurrence or a lawsuit, the policyholder may not recover under the policy, regardless of whether the lack of reasonable notice prejudiced the insurer." *Id.*

Finally, "[w]hen considering the totality of the circumstances, at some point common sense comes into play." *Deerfield Constr.*, 933 F.3d at 813. Here, application of the *Yorkville* factors and common sense point in the same direction: to give proper meaning to the terms of the written instrument, notice, even without a temporal modifier, must still be reasonably given and a sixteen-year delay from an occurrence (even when prompt if tied to the suit) is not reasonable. The District forfeited any right to coverage.

Westport is entitled to judgment on the pleadings on Count I of its complaint. And, there being no duty to defend, Westport is also entitled to judgment on the District's counterclaim for breach of contract and for fees and costs under 215 ILCS 5/155.

16

### B. Boyle

Boyle contends that she is entitled to coverage because Ruby's claims against her stem from her employment at Sycamore. Ruby's allegations fall within both the 2001–2002 and 2002–2003 policy periods. Under the 2001–2002 and 2002–2003 policies, District employees were insured "but only for acts within the scope of their employment." [1-2] at 124; [1-3] at 219. Boyle claims coverage under the 2001–2002 policy's "personal injury" coverage, which the policy defined as injuries arising out of mental anguish, mental injury, and humiliation caused by an offense arising out of the District's business. *See* [1-2] at 114, 130–31. She also claims coverage under both policies' bodily injury coverage, which covered damages for mental anguish, mental injury and humiliation caused by an occurrence. [1-2] at 113, 128; [1-3] at 188, 217. Westport primarily argues that it has no duty to defend or indemnify Boyle because Ruby's complaint alleges misconduct outside the scope of Boyle's employment. If that were so, Boyle would not be an "insured" under either policy.

I cannot resolve this issue, however, because under Illinois law, "a court considering a declaratory judgment generally cannot 'decide issues of ultimate fact that could bind the parties to the underlying litigation.'" *Shockley*, 3 F.4th at 331 (quoting *State Farm Fire & Cas. Co. v. John*, 2017 IL App (2d) 170193, ¶ 23). The doctrine exists to safeguard against "prematurely adjudicating such issues in the declaratory judgment action [that] would result in collateral estoppel in the underlying litigation." *John*, 2017 IL App (2d) 170193, ¶ 23. Here, Ruby has agreed to be bound by any judgment entered in the declaratory judgment action, [17], and

17

the agency relationship between Boyle and the District is at issue in the underlying case. Ruby brings claims against Boyle both individually and as an agent for the District. Specifically, Counts II and III of the operative underlying complaint allege that Boyle was acting as the District's agent. *See* [25] at 61–74. And the operative complaint alleges, at several points, that Boyle injured Ruby "within the scope of her employment." *Id.* at 71–72, 78 ¶¶ 24–26. The scope-of-employment issue here is the same as a live issue in the *Ruby* case. Therefore, whether Boyle's actions were within the scope of her employment is an issue to be resolved in the underlying case.

But Westport holds another card in its hand—the criminal act exclusions. Relieving an insurer's duty to defend based on an exclusionary clause "must be clear and free from doubt." *Zurich*, 990 F.3d at 1078 (quoting *Evergreen Real Estate Servs., LLC v. Hanover Ins. Co.*, 2019 IL App (1st) 181867, ¶ 25). When comparing an exclusionary clause to the underlying complaint, "[i]t is 'the factual allegations in the complaint, and not the legal labels a plaintiff uses,' that matter." *Zurich*, 990 F.3d at 1078 (quoting *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr.*, 566 F.3d 689, 694 (7th Cir. 2009)); *see also Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 613 (7th Cir. 2010).

Here, the 2001–2002 policy and the 2002–2003 policy both expressly exclude from coverage any bodily injury or personal injury "arising … from any dishonest, fraudulent or criminal act of any '[i]nsured.'" [1-2] at 114; [1-3] at 190. This "presents a 'but-for' inquiry: if the plaintiff would not have been injured but for [the criminal or dishonest act], then the exclusion applies to all claims flowing from that underlying

18

conduct regardless of the legal theory used." *Zurich*, 990 F.3d at 1079; *see also G.M. Sign*, 2014 IL App (2d) 130593, ¶ 28 ("'Arising out of' means 'originating from,' 'having its origin in,' 'growing out of,' and 'flowing from.'"). Boyle posits that, because Ruby alleges some conduct by Boyle that is merely negligent and non-criminal, the criminal acts exclusion does not clearly apply. She also emphasizes that the underlying complaints do not allege that she was ever charged with a crime. That is not the inquiry—Boyle must be able to identify factual allegations in the complaint that do not arise from an alleged criminal or dishonest act. Here, she cannot.

In Illinois, it is a felony for an adult who holds a position of trust, authority, or supervision to commit acts of sexual conduct with a minor. 720 ILCS 5/11-1.60(f), 5/11-0.1. All of the underlying complaint's claims rest on allegations that arise out of Boyle's alleged unlawful sexual conduct with Ruby as a minor. *See, e.g.*, [25] at 55–57, ¶¶ 19–30. Further, in the penultimate paragraphs of each count against Boyle, Ruby alleges that Boyle groomed and abused him, and touched or fondled his sex organs while he was a minor. *Id.* at 66, ¶ 31; *id.* at 73, ¶ 34; *id* at 80, ¶ 34; *id.* at 86 ¶ 31. To the extent that Ruby's allegations of grooming do not cross the criminal threshold, they allege a dishonest act. *See* "Grooming" *Cambridge Dictionaries Online*, https://dictionary.cambridge.org/us/dictionary/english/grooming (last visited Aug. 18, 2021) (defining "grooming" as "the criminal activity of becoming friends with a child in order to try to persuade the child to have a sexual relationship"). While Ruby attaches negligence labels to some of his claims against Boyle, his factual

19

allegations all flow from Boyle's alleged grooming and criminal (albeit uncharged) sexual conduct, for which the policies exclude coverage.[6]

In short, the underlying complaint alleges injuries arising out of the sexual abuse of a minor (a crime) and grooming (the dishonest act of manipulating a minor to have a sexual relationship). Even assuming that Boyle is an insured and Ruby has alleged injuries that otherwise would be covered under the policies, there's no coverage because the factual allegations in the complaint clearly allege injuries that arose from criminal and deceptive acts. Accordingly, Westport did not breach its agreement when it declined to defend Boyle in the underlying suit, and it is entitled to judgment on the pleadings.

## IV. Conclusion

Westport's motions for judgment on the pleadings, [28] and [29], are granted. The District's and Boyle's motions for judgment on the pleadings, [30], [32], [35], are denied. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: August 19, 2021

---

[6] Because the criminal acts exclusion applies, Boyle's other arguments—that Ruby's allegations trigger personal-injury coverage, arose out of the District's business, and amount to an occurrence—would not alter the outcome. That is, even assuming Boyle could prevail on each of these arguments, the criminal acts exclusion would still bar coverage.